IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES | } | |
| --- | --- | --- |
| | } | |
| v. | } | No. 2:19-CR-104 |
| | } | |
| GREGORY THOMAS | } | |

MEMORANDUM AND ORDER

This matter is before the Court on the motion of the Defendant (or "Thomas") to withdraw his guilty pleas. [Docs. 10, 18, 19, 21]. For the reasons which follow, the motion will be DENIED.

**I.    Procedural Background**

On November 19, 2009, a federal grand jury sitting in the Eastern District of Tennessee indicted Defendant and four others in an eight-count indictment charging a conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (crack) and other substantive offenses related to trafficking of crack cocaine. [No. 2:09-CR-116, Doc. 3]. Defendant ultimately entered into a plea agreement with the United States, and he pled guilty to the conspiracy charge (Count 1) on January 28, 2010, and was sentenced on February 2, 2011, to a 240-month term of imprisonment, followed by ten years of supervised release. [*Id.,* Docs. 48, 55, 121, 122]. Thomas appealed, [*Id.*, Doc. 123]. On August 6, 2012, the Sixth Circuit Court of Appeals remanded the case for resentencing pursuant to the Fair Sentencing Act. [*Id.,* Doc. 149].

Thomas was thereafter resentenced to a term of 180 months of imprisonment, followed by eight years of supervised release. [*Id.,* Docs. 158, 159]. Defendant completed his prison sentence

1

and began his term of supervised release on October 10, 2017. [*Id.,* Doc. 180]. A Petition for Warrant for Offender Under Supervision was filed on January 15, 2019. [No. 2:09-CR-116, Doc. 187]. The petition stated that Thomas had been under investigation for several months for possession and distribution of illegal drugs, that a confidential informant had purchased drugs from Thomas on three occasions, and that a federal indictment "will be filed against Mr. Thomas." [*Id.*, Doc. 181]. Rather than face indictment, Defendant entered into a Rule 11(c)(1)(C) plea agreement with the government to resolve both this case and the pending supervised release revocation case, agreeing to plead guilty to a two-count information charging him with possession with intent to distribute 50 grams or more of methamphetamine (Count One) and possession with intent to distribute one hundred grams or more of heroin (Count Two). [No. 2:19-CR-104, Doc. 2].

Thomas and the government agreed in the plea agreement that "a sentence of 188 months of imprisonment on Counts One and Two, to run concurrently, is the appropriate disposition of this case." [*Id*. at ¶ 5]. They also agreed in the supervised release case, No. 2:09-CR-116, "that a sentence of 60 months of imprisonment is the appropriate disposition of that case" and "the sentence in [2:19-CR-104] and the sentence in case number 2:09-CR-116-001 shall run concurrently." [*Id*.]. An agreed order of revocation signed by both Thomas and his attorney was entered in No. 2:09-cr-116 on July 31, 2019, and Thomas was sentenced to the agreed upon 60-month term of imprisonment with no further supervision to follow, to be served concurrently with the sentence imposed in this case. [No. 2: 09-CR-116, Doc. 201].

On September 16, 2019, Thomas appeared before the Court, waived indictment, and entered guilty pleas on Counts One and Two of the information. [Docs. 5, 6]. The Court ordered preparation of a presentence investigation report and scheduled sentencing for January 27, 2020.

[Doc. 7]. On November 21, 2019,[1] a pro se letter from Thomas was received by the Court inquiring about whether he "still ha[d] a right to retract [his] plea." [Doc. 10]. The Court immediately scheduled a hearing for December 11, 2019. [*See* Doc. 11]. At the hearing, Thomas advised the Court that he wanted additional time to confer with counsel and consider whether he wished to go forward with his motion to withdraw his guilty pleas. [ *See* Doc. 12, Criminal Minutes]. On January 10, 2020, the CJA attorney for Thomas moved to withdraw as counsel, citing a "conflict in strategy" and Defendant's disagreement "with counsel's advice, strategy or counsel as to how to proceed." [Doc. 16]. Attached to the motion was Defendant's handwritten letter stating that he wished to go forward with his attempt to withdraw his "plea and agreed order of revocation"[2] and wanted the Court to appoint another attorney to represent him. [Doc. 16-1]. The Court granted counsel's motion to withdraw, appointed substitute counsel, cancelled the January 27 sentencing hearing, and directed new counsel to file a supplemental motion if Thomas wished to proceed with a motion to withdraw his guilty plea. [Doc. 17]. Thomas filed a pro se supplement on January 24, 2020, [Doc. 18], and counsel filed a motion to amend the pro se motion to withdraw guilty pleas on March 24, 2020. [Doc. 19]. That motion was granted, [Doc. 20], and the amended motion was filed on April 14, 2020. [Doc. 21]. The government responded on May 8, 2020. [Doc. 26]. An evidentiary hearing was conducted on June 23, 2020. [Doc. 27, 29]. Thomas was the only witness to testify at the June 23 hearing. [Doc. 29, Criminal Minutes].

## II.    Law and Analysis

Rule 11 of the Federal Rules of Criminal Procedure describes the course of action when a Defendant enters a guilty plea. According to Rule 11(d)(2)(B), a voluntarily entered guilty plea

---

[1] The envelope in which Defendant's letter was mailed was postmarked on November 14, 2019. [Doc. 10-1].

[2] In his amended motion to withdraw his guilty pleas, Defendant agreed that "[t]he time to appeal the Agreed Order of Revocation has lapsed and the only relief the [D]efendant may have would be pursuant to 28 U.S.C. § 2255." [Doc. 21].

that has been accepted by the district court may be withdrawn before a sentence is imposed if "the defendant can show a fair and just reason for requesting the withdrawal." *See generally United States v. Hyde*, 520 U.S. 670 (1997) (analyzing Rule 32(e), which was transferred without change to Rule 11(d)(2)(B) as part of the 2002 Amendments to the Rules).

In the Sixth Circuit, a multi-factor balancing test is employed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea. The factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). No one factor controls; the list is general and nonexclusive. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The relevance of each factor will vary according to the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). Plea withdrawals should generally not be allowed where a defendant has made "a tactical decision to enter a plea, wait[ed] several weeks, and then . . . believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)). Rather, Rule 11(d)(2)(B) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone . . . ." *Id.* at 1004.

### A. Time Elapsed Between Pleas and Motion

Thomas signed his plea agreement on July 24, 2019, and it was filed with the Court on July

4

26, 2019. [Doc. 2]. He entered his guilty pleas about six weeks later, on September 16, 2019. [Doc. 6]. He filed his pro se motion two months later, on November 14, 2019. [Doc. 10-1].[3] This factor weighs against withdrawal.

Thomas had a month and a half between the signing of his plea agreement and the entry of his guilty pleas and two months after the entry of the pleas to notify the court of his desire to withdraw his guilty pleas, and only then in a letter, while docketed as a motion to withdraw plea of guilty, did he say that he had "sent messages and a letter to [his] attorney's office to notify him that [he] would like to retract [his] guilty plea." [Doc. 10]. At the hearing before the Court on December 11, 2019, Thomas was still equivocal about his desire to withdraw the guilty pleas and asked the Court for additional time to consult with counsel and consider whether he wanted to go forward with his motion to withdraw his pleas. [Doc. 12]. It was not until January 10, 2020, that Thomas unequivocally notified the Court that he "desire[d] to withdraw [his] 'Plea Agreement Pursuant to FRCP 11(c)(1)(C)' and 'Agreed Order of Revocation,'" after his attorney had "fully explained the possible negative consequences, . . . fully answered [his] questions, [and] discussed any possible defenses." [Doc. 16-1].

Even if the Court only considers the delay between the entry of the pleas (September 16, 2019) and the mailing of his pro se letter to the Court (November 14, 2019), 59 days elapsed, a significant period of time. The Sixth Circuit and other Courts of Appeals have affirmed the denial of motions to withdraw that were filed sooner than Defendant's. *See United States v. Simmons*, 794 F. App'x. 461, 467 (6th Cir. 2019) (46 days); *United States v. Powell*, 236 F. App'x. 194, 197 (6th Cir. 2007) (6 days); *United States v. Rankin*, No. 95–3112, 1996 WL 464982, at *3 (6th Cir. Aug. 14, 1996) (3 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *United States v.*

---

[3] The Court uses the postmarked date on Defendant's letter, presumably the date on which it was presented to prison officials for mailing.

5

*Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35 days); *United States v. Carr*, 740 F.2d 339, 346 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985) (22 days).

### B. Valid Reason for Failure to Move to Withdraw Earlier.

This factor also weighs against Thomas. The only reasons put forth by Thomas for his delay is that he had "sent messages and a letter to my attorney's office to notify him I would like to retract my guilty plea." [Doc. 10]. Thomas provided no details about when or how he had "sent messages and a letter" either in his pro se motion or at the evidentiary hearing. He has not produced the letter he says he sent nor has he indicated by whom he sent any messages or their content. He did shed some light on his attempts to contact his attorney at the evidentiary hearing:

> Q . . . . There was an amount of time that passed before you actually brought to the Court's attention that you were having trouble with Mr. Fairchild and you might want to withdraw your plea agreement, why did that time pass, what was the issue?
>
> A. The time passed, at the time I was trying to get ahold of Mr. Fairchild to get him to send me a copy of my plea agreement, . . . I never did receive that information, I called his secretary several times, and then I eventually wrote to the Court after that.

[Doc. 32 at 10]. Based on this testimony, it seems clear that Defendant's attempts to contact his attorney were for the purpose of obtaining a copy of his plea agreement.

Thomas attempts to minimize the delay in filing his pro se motion by arguing that he made attempts to notify his attorney of his desire to withdraw the guilty pleas. As noted above, Thomas was equivocal about his desire to withdraw from the plea agreement and remained equivocal about withdrawing his guilty pleas all the way up to January 10, 2020. That equivocation is borne out by his testimony at the evidentiary hearing. On the morning Thomas was scheduled to change his pleas, September 16, 2019, he expressed some indecision about whether or not he was ready to go forward with his pleas. After time to consult with his attorney, however, he told the Court, under

6

oath, that he had had a "chance to discuss with [his] lawyer the issues that were on [his] mind and [was] ready to go forward," [Doc. 24, Transcript of COP hearing, at 2], and his response to the Court's inquiry about whether he wanted to go forward was an unequivocal, "Yes, sir." [*Id.*]. Thomas testified at the evidentiary hearing that, during his conference with his attorney, he told him that he "didn't want to go forward" but that he, "went on, I went on to it, I went on with it." [Doc. 32 at 40]. He acknowledged, again unequivocally, however, to the Court that he wished to go forward with the pleas. [*Id.* at 41]. Thomas simply has not provided a plausible explanation for the delay in filing his motion.

### C. **Assertion of Innocence**

The third factor weighs heavily against Thomas. In his plea agreement, Thomas stipulated facts which clearly establish his factual guilt of the charges in the two counts. And he does not now dispute those facts or assert his factual innocence. During the evidentiary hearing, the attorney for the government had the following exchange with Thomas:

> Q. . . . You're not saying you're innocent of these crimes?
> A. I'm legally innocent of the information that was obtained.
> Q. But factually you're not innocent?
> A. I'm legally innocent of the information that was obtained . . . .
>
>     . . . .
>
> Q. At no time did you claim that you were innocent of these charges, . . . did you?
> A. I can exercise my Fifth Amendment rights here, right?

[Doc 32 at 24-25].

Although acknowledging that he had testified at the September 16 hearing that he was "offering to plead guilty because [he was] in fact guilty," Thomas refused to assert factual innocence, continuing rather to assert "legal innocence"[4] and pleading the "Fifth" in response to

---

[4] The Sixth Circuit addressed a similar situation in *United States v. Hughes*, 392 F. App'x. 382, 386 (6th Cir. 2010) (dealing with arguments related to "an opportunity to pursue a suppression motion in the hope of having the charges

7

further questions about his factual innocence by the Court, after consultation with his attorney. [*Id*. at 26-27]. Thomas told the Court that the reason he asserted his legal innocence was because of his belief that a confession he made "must be suppressed because [he was] not provided with a *Miranda* warning." [*Id*. at 38]. Although Thomas acknowledged that the officers had obtained a signed *Miranda* warning, he claims the "ATF agent asked me to sign the *Miranda* warning afterwards . . . . " [*Id*. at 39]. Because Thomas admitted on the record under oath that there was a sufficient factual basis for the crimes to which he pled guilty, this factor weighs against him. *See United States v*. *Dixon,* 479 F.3d 431, 437 (6th Cir. 2007) (quoting *United States v. Baez*, 875 F.3d 805, 809 (6th Cir. 1996) (holding that "the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea.")).

### D. Circumstances Underlying the Guilty Plea

"When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citation omitted). This Court took painstaking steps to fully comply with the requirements of Federal Rule of Criminal Procedure 11. Rule 11 has been carefully drafted to the end that the guilty plea is entered by a defendant who understands the nature of his applicable constitutional rights, that his plea of guilty is voluntary with full understanding of the nature of the crime charged and the consequences of his guilty plea, and that there is a factual basis for the crime to which the plea is offered. *Goldberg*, 862 F.2d at 106. Based on the Court's observation of the defendant and his answers to the Court's questions at the September 16 hearing, the Court made a specific finding that Thomas had "knowingly waived his constitutional rights to trial" and had offered to plead guilty knowingly and voluntarily. [Doc. 24

---

dismissed" (*i.e.,* legal innocence) and finding that not to "establish a fair and just reason for withdrawal.").

at 25].

The Court inquired into the Defendant's understanding that he could seek clarification from the Court if he did not understand any of the Court's questions, could confer with his attorney on any question if he found it necessary, that he was under oath, and that he could be charged with another crime if he testified falsely. He testified clearly and unequivocally that he understood. [Doc. 24 at 3]. The Court asked about Thomas's age, education, and physical and mental condition. [*Id*. at 3-4]. The Court confirmed that he had received and read the two-count information filed by the United States, [*id*. at 4, 6], confirmed that his waiver of indictment was voluntary and knowing, [*id.* at 5], confirmed that he had had sufficient time to discuss the case with his lawyer, believed his lawyer to be fully aware of all the facts upon which the charges were based, understood each element of the offenses, and had discussed with his lawyer "any possible defenses he might have." [*Id*. at 6, 7, 9-10]. The Court read the two-count information to Thomas and confirmed that Thomas knew and understood what he was charged with. [*Id*. at 7-8]. The defendant testified that he had read and signed the plea agreement, that he understood its terms and conditions, and that his lawyer had explained it to him. *[Id*. at 10]. He further testified that he was satisfied with his lawyer's representation of him. [*Id*.].

The Court confirmed Defendant's understanding and voluntary waiver of his right to a jury trial, his right to representation by an attorney at a trial, and other trial related rights. [*Id*. at 11-12]. Thomas was informed of the potential penalties for his offenses and testified multiple times that he understood that his 11(c)(1)(C) plea agreement, if accepted by the Court, required the Court to impose a 188-month term of imprisonment, no more and no less. [*Id*. at 13, 18-19]. Thomas testified that the stipulated facts contained in the plea agreement were true and that he was pleading guilty because he was guilty. [*Id.* at 14-16]. The Court reviewed the appellate rights waivers

9

contained in the plea agreement and ensured that Thomas had discussed them fully with his attorney. [*Id.* at 21-22]. Thomas confirmed that his attorney talked to him about how the advisory guidelines might apply to his case and that his guidelines range was one of the factors the Court would consider in determining whether or not to accept the agreement. [*Id*. at 22].

Thomas puts forth several reasons why it is fair and just to allow him to withdraw his guilty pleas in spite of the Court's full compliance with Rule 11: 1) that his former attorney, who represented him at the time of his guilty pleas, never went over the plea agreement with him, and he never read the plea agreement; 2) that his attorney never showed him any physical evidence of the alleged crimes, *i.e.,* the discovery; 3) that his attorney never discussed with him any possible defenses; 4) that he did not know that he could suppress his confession because agents gave him *Miranda* warnings only after he had given the statement; 5) that his attorney never went over the guidelines with him; and 6) that he did not understand that his sentence would not be less than the agreed upon 188 months. The Court will address each of these claims in turn.

**(1). <u>First and Sixth Claims</u>**.

Defendant asserts, first of all, that he lacked knowledge and understanding of the plea agreement, including the sentence to be imposed. Thomas testified at the evidentiary hearing that his attorney never presented him with or explained to him the plea agreement, [Doc. 32 at 7, 15, 22, 40], that he never read the plea agreement, [*id*. at 16-17],[5] that he did not understand what was in the plea agreement, [*id*. at 18-19], and that he didn't understand the basis of the charges against him, [*Id.* at 20, 45-47]. Yet each of these assertions made by Thomas is flatly contradicted by statements made under oath by Thomas at his change of plea hearing.

To be sure, it is important to note that Thomas did display some reluctance to go forward with

---

[5] Thomas did acknowledge that he read "some of [the plea agreement]" when it was given to him by his first attorney. [Doc. 32 at 17].

10

his change of plea hearing on the morning of September 16. As a result, the Court delayed the hearing so Thomas could further consult with his attorney.[6] When the case was finally called for hearing, the court addressed Thomas directly about his indecision:

> Q. (By the Court) I understand that there was a bit of indecision on your part whether or not you were ready to go forward. Have you now had a chance to discuss with your lawyer the issues that were on you mind and are you ready to go forward?
> A. Yes, sir.

[Doc. 24 at 2]. Thomas showed no further indecision throughout the entire hearing. [*See generally* Doc. 24]. As noted above, the Court complied scrupulously with Rule 11. With respect to the plea agreement, the Court specifically inquired:

> Q Have you read this plea agreement?
> A. Yes, sir.
> Q. And has your attorney explained to you all the terms and conditions of the plea agreement you've entered into with the United States?
> A. Yes, sir.
> Q. Do you fully understand all the terms and conditions of this plea agreement you've made with the government?
> A. Yes, sir.
>
> . . .
>
> Q. Are you satisfied with you lawyer's representation of you in the case?
> A. Yes, sir.

[*Id.* at 10]. As the record establishes, Thomas answered the Court's questions clearly and without hesitation.

The Court also went to great pains to assure itself that Thomas understood both the maximum possible sentence and the mandatory minimum sentence that applied to these offenses, [*id*. at 17-18], and also the nature of his Rule 11(c)(1)(C) plea agreement:

> Q. As I mentioned, you and the government have agreed in the 11(c)(1)(C) plea agreement that a sentence of 188 months of imprisonment on Counts One and

---

[6] The hearing was scheduled to begin at 9:00 a.m. on September 16 but did not begin until 10:33 a.m.

11

> Two to run concurrently is the appropriate disposition in this case. Do you understand that if the Court accepts this plea agreement, both the law and the plea agreement itself will require this court then to impose a 188-month term of imprisonment?
> A. Yes, sir.

[*Id*. at 13]. The Court then addressed the penalty provision of the Rule (11)(c)(1)(C) plea agreement a second time:

> Q. However, as we have discussed in this case, because you have entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Rules of Criminal Procedure, the parties have agreed upon the appropriate disposition of the case, that being a term of imprisonment of 188 months of imprisonment which may also be followed by any appropriate term of supervised release; do you understand that?
> A. Yes, sir.

[*Id*. at 18]. And finally, the Court addressed it yet a third time with the Defendant:

> Q. Now, I also noticed here one other aspect of this plea agreement that I should have mentioned earlier, but it appears, Mr. Thomas, that you also have pending proceedings in case number 2:09-CR-116-001 for a violation of supervised release in that case. It appears that as part of this plea agreement you have also agreed with the government that a sentence of 60 months of imprisonment is the appropriate disposition of that case, and that the sentence imposed in 09-CR-116 shall run concurrently with the 188-month sentence to be imposed in this case.
> A. Yes, sir.
> Q. And, once again, do you understand that if I accept this Rule 11(c)(1)(C) plea agreement, I will have no discretion to impose any sentence other than the 188-month term of imprisonment agreed upon in this case, that is case number 19-CR-104, and a concurrent term of 60 months of imprisonment in the pending supervised release revocation matter in case number 09-CR-116; do you understand that?
> A. Yes, sir.

[*Id*. at 18-19]. There is little doubt that Thomas understood the gravity of the oath he took to tell the truth on September 16, especially given his long history of involvement with the court system. He answered the Court's questions without equivocation and without asking for any clarification. Based on his demeanor and his answers to the Court's questions, the Court found his pleas to be offered knowledgably and voluntarily. He should now be bound by his answers under oath at the

12

change of plea hearing.[7] These "representations of the defendant, . . . as well as any findings made by the judge in accepting the plea[s] constitute a formidable barrier. . . . Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Machibroda v. United States*, 368 U.S.487, 495-96 (1962); *Price v. Johnston*, 334 U.S. 266, 286-87 (1948)); *see also Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994) ("[W]e remain mindful of the Supreme Court's admonition that guilty pleas be accorded a 'great measure of finality.'") (citing *Blackledge*, 431 U.S. at 71)). Thomas's testimony at the evidentiary hearing to the contrary is simply not credible nor is his testimony that his attorney simply instructed him to answer "Yes" to the Court's questions, especially considering that his testimony is completely uncorroborated and that not all of his answers were "Yes."

### (2). Claim Two—Physical proof/Discovery

Although Thomas testified that he met with his attorney, Mr. Fairchild, "five, six times," he claims he was never shown "any proof" of his alleged crimes, [Doc. 32 at 6-8], and that his attorney never requested discovery from the government. He offers no corroborating evidence, however, and once again the record contradicts his claims.[8] First of all, he testified on September 16 that he was satisfied with his lawyer's representation of him, [Doc. 24 at 10], that he had sufficient time to discuss the case with him, [*id*. at 6], and more importantly, that he was offering to plead guilty

---

[7] The Court acknowledges that the barrier erected by under-oath testimony does not result in a per se rule that he is bound by his former answers. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

[8] Although Thomas's former attorney was not called as a witness at the evidentiary hearing, he stated to the Court at the initial hearing held after receipt of Thomas's letter that the Federal Defender's office lawyer had "provided [him] with discovery he had," that he met with Thomas "multiple times" and "we went . . . through the discovery I had been given up to that point," and that Thomas "authorized me to see if I could get that plea, that plea offer that was taken off the table by Mr. Reeves (the AUSA), see if I could get that put back on the table, and I was able to do that." Thomas did not take issue with his attorney's statements even though his attorney invited him to "if I say anything wrong, correct me, okay." [Doc. 25, Transcript of Dec. 11 Hearing, at 5-6].

13

because he was in fact guilty, [*Id.* at 16]. Second, he stipulated to a factual basis sufficient for the Court to find him guilty of the offenses. [Doc. 2 at ¶ 3]. The stipulated facts were set out as follows in the plea agreement:

> 3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.
>
> Law enforcement agents in Knoxville, Tennessee[,] were investigating a methamphetamine and heroin distribution network. During the course of that investigation, agents made controlled buys of narcotics from the defendant on several occasions. On January 17, 2019, Agents David Norton and Mathew Thompson of the Tennessee Bureau of Investigation conducted an interview with the defendant at the Knox County Jail. The defendant admits that he made this statement on January 17, 2019, which detailed the defendant's involvement in the methamphetamine and heroin distribution network. The defendant now affirms that the statement he made to law enforcement on January 17, 2019, is true and accurate.
>
> In the statement, the defendant told law enforcement that following his release from a halfway house, he began purchasing methamphetamine from an individual, S.S. Beginning in October 2017, the defendant would purchase a quarter to half an ounce of methamphetamine at a time from S.S., purchasing a total of two or three ounces from S.S. The defendant would then sell the methamphetamine to various individuals in resale quantities. In February 2018, the defendant met E.J. in Newport, Tennessee[,] and began purchasing two or three ounces of methamphetamine per week. E. J.'s source of supply was in Atlanta, Georgia[,] and the defendant would meet E.J. upon his return and purchase methamphetamine from him. Around this time the defendant then began to purchase heroin from E.J. Between March 2018 and June 2018, the defendant was purchasing approximately one pound of methamphetamine and one ounce of heroin from E.J. at least every two weeks. The defendant would then sell the methamphetamine and heroin to various individuals in resale quantities.
>
> In June 2018, E.J. was arrested and the defendant began purchasing methamphetamine from C.W. The defendant was buying four ounces of methamphetamine from C.W. once a week for resale. The defendant was purchasing methamphetamine from C.W. at this rate from June to November 2018. In November 2018, E.J. was released from custody and the defendant returned to purchasing methamphetamine from him beginning with three pounds

14

> purchased in November. In late December 2018 or early January 2019, the defendant purchased five ounces of methamphetamine from S.R. which the defendant then sold to other individuals in resale amounts. The defendant admits that he was the supplier of methamphetamine and heroin for multiple individuals in Eastern Tennessee.
>
> The defendant and the United States agree that the relevant weight of methamphetamine in the case is a least 1.5 kilograms but less than 4.5 kilograms but less than 4.5 kilograms of actual methamphetamine.

[*Id.*]. Thomas testified that he "read the stipulation of facts contained in paragraph 3 of [his] plea agreement carefully" and had reviewed the stipulation "carefully with [his] attorney." [Doc. 24 at 14-15]. He stipulated under oath that the facts in paragraph 3 of his plea agreement were "true and correct" and that he agreed "with the summary of what he did" in the case as set out in paragraph 3. [*Id.* at 15]. Based on his own sworn testimony, it is clear that Thomas had carefully reviewed the facts with his attorney and his claims otherwise lack credibility.

### (3) Claim Three—Discussion of Possible Defenses

At the June 23, 2020, evidentiary hearing, Thomas testified that his attorney never discussed with him "any of the defenses to the crimes." [Doc. 32 at 18]. Yet again, this testimony is directly contradicted by defendant's under oath testimony at the change of plea hearing:

> Q. Have you and your attorney discussed any possible defenses you might have to these charges?
> A. Yes, sir.

[Doc. 24 at 10]. Once again, Thomas's testimony at the evidentiary hearing is not credible or corroborated by any other testimony or evidence. *See* discussion of *Blackledge*, *supra*, at Part D, (1) & (3).

### (4) Suppression of Confession

This appears to be the primary reason Thomas seeks to withdraw his guilty pleas. [*See generally* Doc. 32 at 12]. Thomas claims that his attorney never explained what his rights were

15

under *Miranda v. Arizona*, 384 U.S. 436 (1966), and did not inform him that he could suppress the statements/confession that he had given to agents during a Knoxville interview. [Doc. 32 at 8-9]. More specifically, he claims that he "didn't know [he] had the opportunity to suppress the evidence" on grounds that "ATF agent[s] failed to give *Miranda* warning prior to the custodial interrogation." [*Id*. at 12, 26].[9]

This claim fails for two equally important reasons. First, the Sixth Circuit has not found that a defendant's post-plea expression of the desire to pursue a motion to suppress will itself establish a fair and just reason for withdrawal. *United States v. Hughes*, 392 F. App'x. 382, 386 (6th Cir. 2010) (citing *United States v. Haygood*, 549 F.3d 1049, 1053 (6th Cir. 2008); *United States v. Sanders*, 125 F. App'x. 685, 687 (6th Cir. 2005)). Second, Thomas's testimony at the evidentiary hearing on this issue is internally inconsistent and not credible. Thomas testified initially that he had been advised by Mr. Stambaugh, his third court-appointed attorney, that he had a defense to the charges based on a violation of *Miranda*. [Doc. 32 at 38]. Later in the same hearing, Thomas asserted that he learned of the defense after he was incarcerated at Salem, Virginia, when he "looked up the case at that law library." [*Id*. at 49].

### (5) Advice on the Sentencing Guidelines

When asked at the evidentiary hearing whether his attorney had gone over the guidelines with him or "what [he] might be facing under these criminal penalties," Thomas answered, "No," but in the next breath said: "Mr. Fairchild just said that I could be a career criminal . . . due to my—to the career offender thing and the probation, it was at level 5 and level 6." [*Id*. at 10]. He also testified that, since then, he had done his own research and didn't "believe [he is] a career offender." [*Id*].[10]

---

[9] According to Thomas, he signed a *Miranda* waiver after he made incriminating statements. [Doc. 32 at 39].

[10] Although Thomas may have been a career offender at the time of his 2010 conviction in this Court, he is not now a career offender due to changes in the applicable law since 2010. His guidelines range for imprisonment is 188 to 235 months of imprisonment in the instant case, [Doc. 13, PSR, at ¶ 68], and 46 to 57 months guidelines range and a statutory

16

There are several problems with this assertion. First, it is completely contrary to under-oath testimony given by Thomas at the September 16 change of plea hearing. The Court specifically advised the defendant that the advisory guidelines had been established for judges to consider in determining sentences in criminal cases and that his advisory guidelines range was one factor the Court must consider in determining whether to accept or reject his Rule 11(c)(1)(C) plea agreement. Thomas was then asked if he and his attorney had "talked about how these guidelines might apply to [his] case." [*Id*. at 22]. His answer was a clear and unequivocal "Yes, sir." [*Id.*]. (*See* discussion of *Blackledge*, *supra*). Second, even if Defendant's attorney did advise Thomas that he "could be a career criminal," that alone would not, in the Court's view, establish a just reason to withdraw the guilty pleas. That mistake, if indeed made, would also not increase either the statutory maximum or the mandatory minimum terms of imprisonment, and Thomas was clearly aware of both.[11] While misstatements by a attorney of the statutory maximum possible sentence may invalidate a guilty plea, *United States v. Dixon*, 479 F.3d 431, 435 (6th Cir. 2007) (citing *Pitts v. United States*, 763 F.2d 197, 201 (6th Cir. 1985)), the mere fact that an attorney incorrectly estimates the guidelines range is not a "fair and just reason" for withdrawal of the pleas. *See generally Brady v. United States*, 397 U.S. 742, 756 (1970) ("A defendant is not entitled to withdraw his pleas merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action."); *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) ("[T]he mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement."). Finally, the credibility of Defendant's testimony about his attorney's miscalculation is highly suspect, even

---

maximum of 60 months in the supervised release revocation case, No. 2:09-CR-116, which could have been ordered to be served consecutively with the sentence in this case. [No. 2:09-CR-116, Docs. 181, 201].

[11] The statutory maximum and mandatory minimum for both offenses was clearly set out in the plea agreement and during the change of plea hearing.

17

if uncontradicted by other testimony, for the reasons set forth above. Even if the Court accepts Defendant's statement about his attorney's misconception about his career offender status, this factor weighs only marginally in Defendant's favor.

### (E). Defendant's Nature and Background

This factor weighs only marginally in favor of the government. Thomas is 41 years old and has a high school education. [Doc. 24 at 4]. He was articulate at the June 23 hearing, had done legal research on his own, and exhibited familiarity with fairly complex legal concepts.

### (F). Prior Experience with the Criminal Justice System

Thomas has 14 prior criminal convictions, "give or take," and his criminal history spans more than 25 years. [Doc. 32 at 32]. As set forth above, he was convicted in this Court in 2010 of conspiracy to traffic crack cocaine, served a term of imprisonment of 180 months, and was on supervised release when the instant offenses were committed. He has resolved all his prior cases with signed plea agreements and "know[s] what a plea agreement is and what it does." [*Id*. at 33]. Thus, the fact that Thomas has had persistent contact with both the state and federal criminal justice systems over a lengthy period of time weighs heavily against Thomas.

### (G). Prejudice to the Government

The government makes no claim that it would be prejudiced if the motion to withdraw were to be granted.

## III. Conclusion

On balance, the *Bashara* factors weigh heavily against Thomas on his motion. The motion to withdraw guilty pleas, [Docs. 10, 18, 19, 21], is, for the reasons set forth above, DENIED. The sentencing hearing is rescheduled for November 17, 2020 at 3 p.m. Sentencing memoranda are due on November 3, 2020.

SO ORDERED.

ENTER:

                                                  s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE